IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JULIE T.,[1]                                             No. 6:24-cv-00773-JR

                    Plaintiff,                           OPINION & ORDER

        v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                    Defendant.

RUSSO, Magistrate Judge:

      Plaintiff Julie T. brings this action for judicial review of the final decision of the

Commissioner of Social Security ("Commissioner") denying her application for Title II

Disability Insurance Benefits under the Social Security Act ("the Act"). All parties have

consented to allow a Magistrate Judge to enter final orders and judgement in this case in

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the nongovernmental party in this case.

accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). ECF No. 4. For the reasons set forth

below, the Commissioner's decision is reversed and remanded for further proceedings.

## PROCEDURAL BACKGROUND

Born in October 1968, plaintiff alleges disability beginning February 3, 2021. Tr. 150.

Plaintiff alleged disability due a variety of conditions, including lower back pain; neck/shoulder

pain; tingling in hands and feet; cognitive issues; headaches; anxiety; depression; and sleeping

issues. Tr. 190. Her application was denied initially and upon reconsideration. Tr. 73-77, 85-89.

On October 12, 2023, plaintiff appeared at an administrative hearing before Administrative Law

Judge ("ALJ") Katherine Weatherly. Tr. 40-75. On December 14, 2023, the ALJ issued a

decision finding plaintiff not disabled between February 3, 2021, and the date of decision. Tr.

14-29. After the Appeals Council denied her request for review, plaintiff filed a complaint in this

Court. Tr. 1-6.

## THE ALJ'S FINDINGS

Initially, the ALJ found that plaintiff met the insured status requirements of the Act

through December 31, 2025. Tr. 19. At step one of the five step sequential evaluation process,

the ALJ found plaintiff had not engaged in substantial gainful activity since February 3, 2021,

the alleged onset date. Tr. 19. At step two, the ALJ determined the following impairments were

medically determinable and severe: Lumbar Spine Degenerative Disc Disease, Spondylolisthesis

and Morbid Obesity. Tr. 19. At step three, the ALJ found plaintiff's impairments, either singly or

in combination, did not meet or equal the requirements of a listed impairment. Tr. 21.

Because plaintiff did not establish presumptive disability during the relevant period at

step three, the ALJ continued to evaluate how her impairments affected her ability to work. The

ALJ resolved that plaintiff had the residual function capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) except "she can occasionally stoop, crouch, and crawl." Tr. 22.

At step four, the ALJ determined the claimant could perform past relevant work as a Manager, DOT# 166.117-018, Sedentary, SVP 8, Skilled. Tr. 25. The ALJ therefore found plaintiff not disabled from February 3, 2021, through the date of the decision. Tr. 25.

## DISCUSSION

Plaintiff argues the ALJ committed two harmful errors. She contends the ALJ erred by (1) discounting her testimony without a clear and convincing reason for doing so, and (2) improperly evaluating the medical opinions of NP Wendy Hounsel. For the reasons that follow, the Court finds the ALJ erred, reverses, and remand for further proceedings.

## I.    Symptom Testimony

Plaintiff first contends the ALJ erred by discrediting her testimony about the extent of her physical limitations. Pl.'s Br., ECF No. 8 at 2-7. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of ... symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which ... testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir.

1995) (internal citation omitted). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2017 WL 5180304. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted). The question is not whether the ALJ's rationale convinces the court, but whether the ALJ's rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

At the hearing, plaintiff testified that she does not bend over or pick up items from the ground due to pain. Tr. 50. She has difficulty typing due to numbness in her fingers. *Id.* Even with the option of sitting and standing as needed, she was unable to continue with her past work due to her need to lay down. Tr. 51. The pain in her lower back radiates through her hips and shoots down her leg and into her ankle when she sits for long. *Id.* The medications she takes make her drowsy. Tr. 52. She has tried physical therapy, spinal injections, and ablation all without improvement. Tr. 57.

In written testimony, plaintiff alleged that she has chronic pain that limits her ability to sit and stand and affects her cognitive abilities and disrupts her sleep. Tr. 222. She characterized her pain as constant and extremely distracting. *Id.* She has difficulties dressing, showering, toileting, and requires assistance. Tr. 223. She is able to perform housework in fifteen-minute spurts. Tr. 224. Her pain increases with light tasks. *Id.* She has difficulty focusing when in pain. Tr. 225. She spends most of her day in bed. *Id.* On a good day, she can walk one-half mile. Tr. 226.

However, her pain limits her abilities to lift, squat, bend, stand, reach, walk, sit, kneel, talk, and climb stairs. Tr. 227. She relies on a cane and crutches when her pain flares up. Tr. 228.

The ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 23. However, the ALJ concluded that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 23. Specifically, the ALJ found plaintiff's symptom allegations were inconsistent with objective medical evidence, and that plaintiff's daily activities conflicted with her symptom allegations. Tr. 23-25.

The ALJ failed to identify objective medical evidence that directly conflicted with plaintiff's testimony about limitations stemming from her chronic back pain, so did not offer a clear and convincing reason for discounting it. Conflict with objective medical evidence can be a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. § 416.929(c)(2). At the hearing, plaintiff testified she spent a considerable amount of time in bed, required help with household chores, needed a cane or crutches when pain flares, experienced numbness in her fingers that made it difficult to use a keyboard, and had pain that radiated down her legs when she sat down. Tr. 36-37, 48-50. The ALJ cited medical records showing plaintiff had normal motor strength and sensation in her lower extremities and that she tested negative on bilateral straight leg raise tests. Tr. 23, 445. Plaintiff also routinely demonstrated a normal or unremarkable gait (Tr. 379, 384, 391, 408, 411, 414, 417, 420, 425, 428, 431, 434, 445, 461, 466, 471, 500, 503, 568, 572, 576, 581, 584) and examination findings did not show abnormalities in the upper or lower extremities. Tr. 408, 411, 414, 417, 420, 425, 428, 431, 434, 445, 496, 500, 503, 510, 553, 568, 572, 576, 581, 584 These records establish that plaintiff has a

baseline of strength and flexibility, but say nothing about the amount of back pain plaintiff suffers. *See* Tr. 50-52. The bulk of plaintiff's testimony described the difficulties she suffers as a result of pain, which does not conflict with gait tests or straight leg raises. Because the evidence the ALJ cited did not conflict with plaintiff's symptom testimony this was not a clear and convincing reason for the ALJ to discount plaintiff's allegations.

The ALJ also discounted plaintiff's subjective symptom testimony because it was inconsistent with her statements about daily activities. Tr. 23-25. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills," or (2) where the activities "contradict [a claimant's] testimony." *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The Ninth Circuit has even found such routine activities as playing video games, using public transportation, and preparing meals to undercut a claimant's testimony of disabling limitations. *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021). A claimant need not be utterly incapacitated to receive disability benefits, however, and sporadic completion of minimal activities is insufficient to support a negative credibility finding. *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *see Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity to be inconsistent with the claimant's alleged limitations to be relevant to her or her credibility).

The ALJ also failed to provide a clear and convincing reason to discount plaintiff's testimony as inconsistent with her daily activities because the opinion lacked the required specificity. To discount a plaintiff's testimony, an ALJ must cite daily activities that "meet the

threshold for transferable work skills" or "contradict [a claimant's] testimony." *Orn,* 495 F.3d at 639. The Ninth Circuit has emphasized that specificity is important in this context: in addition to being clear and convincing, an ALJ's reasons "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). That means an ALJ must "identify the testimony she found not credible," and "link that testimony to the particular parts of the record supporting her non-credibility determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). When analyzing plaintiff's daily activities, the ALJ failed to meaningfully connect the dots. She names several activities "inconsistent with [plaintiff's] allegations of total disability," but fails to tie any of those activities to what specific testimony she believed was overstated. Tr. 23. This does not identify which of plaintiff's statements or what testimony is supposedly undermined by the record, or what parts of the record undermine it. *See Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (stating that a court "cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting [a clamaint's] pain testimony where . . . the ALJ never identified which testimony she found not credible, and never explained which evidence contradicted that testimony"). Because the ALJ failed to evaluate plaintiff's testimony and daily activities with the required specificity, this reason was also not clear and convincing.

## II.    Medical Opinion Evidence

Plaintiff also argues the ALJ did not properly consider FNP Mary Hounsel's medical opinion. Pl. Br, ECF No. 8 at 7-12. For claims filed on or after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. 20 C.F.R. § 404.1520c. Instead, the agency considers several factors. 20 C.F.R. § 404.1520c(a).

These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. § 404.1520c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

Under this framework, the ALJ must "articulate ... how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. § 404.1520c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R § 404.1520c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

FNP Wendy Hounsel was plaintiff's primary care provider since October 1, 2020. Tr. 435. She referred plaintiff for spinal injections and monitored their impact. Tr. 427. On December 18, 2020, she wrote that plaintiff experienced significant back and neck pain with radiation into her left hip after two spinal injections. *Id*. NP Hounsel continued to treat plaintiff for pain through August 15, 2023. Tr. 568.

On October 6, 2023, NP Hounsel provided a medical source statement, in which she opined that plaintiff was unable to perform light work, that her pain left her unable to perform her past skilled work as a Human Resources Manager, and that plaintiff could not combine sitting, standing, and walking to complete an eight-hour workday on a consistent basis. Tr. 588.

The ALJ considered NP Hounsel's medical opinion and rejected it as unpersuasive. Tr. 24. The ALJ characterized the questions that NP Hounsel responded to as leading and noted that she did not cite objective evidence or clinical signs. *Id.* The ALJ noted that plaintiff had full strength on June 28, 2021. Tr. 445. Further, the ALJ noted there was no objective evidence of peripheral neuropathy in the record. Tr. 24. Finally, the ALJ noted that plaintiff asked for a letter in support of disability in June 2021, suggesting that NP Hounsel's opinion was based upon plaintiff's subjective complaints. *Id.*

The ALJ adequately discussed the strength of the evidence underlying NP Hounsel's opinions in the record when finding it unpersuasive. Tr. 25. The supportability factor requires ALJs to consider the persuasiveness of a medical opinion based on how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support her or her medical opinion." 20 C.F.R. § 404.1520c(c)(1). The ALJ discounted NP Hounsel's opinion first because it was not supported by any objective medical evidence, and unsupported by her own treatment records. Tr. 24. The ALJ started by noting that several of NP Hounsel's opinions conflicted with her own observations. For example, her examinations routinely noted plaintiff was alert and well-oriented, possessed a normal gait, and had no problems moving her extremities. *See, e.g.,* Tr. 408, 411, 414, 417. As the ALJ elaborated, NP Hounsel also failed to cite any objective medical evidence or clinical signs to support her assigned limitations. Tr. 24. Instead, NP Hounsel identified several diagnoses and repeatedly referenced plaintiff's pain as the underlying cause of her limitations along with other symptoms such as "fatigue" and "brain fog", none of which NP Hounsel objectively measured. Tr. 588. As the Ninth Circuit has held, a treating source's reference to symptoms like pain, which "cannot be objectively verified or measured[,]" is of limited value when determining the persuasive value of the same treating

source's opinion. *Fair*, 885 F.2d at 601. The ALJ reasonably found these several normal findings and lack of objective medical evidence undermined NP Hounsel's assessment of extreme limitations. In doing so, the ALJ sufficiently considered the supportability of NP Hounsel's medical opinion when concluding it was poorly supported by explanation and objective medical evidence.

The ALJ also reasonably considered the inconsistency of NP Hounsel's limitations with the overall medical record. The consistency factor requires the ALJ to assess medical opinions' alignment with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). The ALJ reasonably found several aspects of NP Hounsel's opinion inconsistent with the record, and therefore unpersuasive. Tr. 24. For example, the ALJ explained that NP Hounsel's opinion was inconsistent with other evidence in the record, such as evidence from other examinations showing full motor strength in the bilateral extremities. Tr. 24, 445. Moreover, NP Hounsel's opinion was also inconsistent with the findings of Dr. Davenport, which the ALJ found more persuasive because it relied on significant objective medical evidence showing plaintiff's back pain was not as severe as NP Hounsel opined. Tr. 24. Dr. Davenport also noted only mild degenerative changes in the claimant's lumbar spine and that she successfully treats her back pain with medications. *Id.* The ALJ relied on Dr. Davenport's opinion because it noted plaintiff was able to continue working at SGA levels during the relevant period. Tr. 24. In sum, the ALJ adequately considered these objective findings, and reasonably concluded they were inconsistent with several of the limitations in NP Hounsel's opinion.

## III. Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210.

Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The Court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

Defendant committed harmful error by failing to provide clear and convincing reasons to discount plaintiff's symptom testimony. There remain ambiguities and conflicts in the record between plaintiff's testimony and the medical evidence, however, so remand is appropriate. The Commissioner's decision is reversed, and this case is remanded for further proceedings so that

the ALJ can properly consider plaintiff's testimony, reformulate the RFC if necessary, and seek further VE testimony at step five, if necessary.

## CONCLUSION

For the reasons given above, the Commissioner's decision is reversed and remanded for further proceedings.

IT IS SO ORDERED.

DATED this 3rd day of February, 2025.


 /s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge